**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Frank L. Canez et al., | ) | No. CIV 02-1387-PHX-MHM |
| Plaintiffs, | ) | **ORDER** |
| vs. | ) | |
| Andrew Gastelum et al., | ) | |
| Defendants. | ) | |

Plaintiffs in their first amended complaint have asserted a claim for false light invasion of privacy (Count Three) against Defendants Gastelum and Hefner. (Doc. 1). On January 30, 2006, Defendants filed a motion in limine to preclude Plaintiff Canez from introducing evidence at trial of a March 31, 2001 *Arizona Republic* newspaper article or press coverage that reported on the alleged confrontation incident and to preclude testimony of Brent Whiting, the reporter for the *Arizona Republic* who investigated the incident and authored the news article. Defendants' basis for precluding the proposed evidence was impermissible hearsay. (Doc. 114, 126). On February 17, 2006, Plaintiffs filed a response in opposition to the motion in limine contending that the evidence was admissible as relevant to Plaintiff Canez' false light invasion of privacy claim. (Doc. 135).

At a hearing on February 21, 2006, the Court inquired of counsel whether Plaintiff Canez was a public figure as relevant to the false light invasion of privacy claim. At the parties' request, the Court permitted additional briefing on the issue. (Doc. 139).

The parties filed their simultaneous briefing on February 27, 2006. (Doc. 141 & 142). In their supplemental response, Plaintiffs acknowledge that based on Plaintiff Canez' position as an elected Constable, Maryvale Justice Court, Mr. Canez would be considered a public figure and therefore would not have the right to bring a claim for false light invasion of privacy, citing Godbehere v. Phoenix Newspapers, Inc., 783 P.2d 781 (Ariz. 1989). Plaintiffs argue, however, that legal authority supports a cause of action for defamation. Plaintiffs therefore have requested permission "to amend the Caption of their COUNT THREE to reference a claim for defamation" ... "since the very same allegations made in the Complaint support a defamation claim." (Doc. 142 at p. 3). The Court heard brief oral argument on Plaintiffs' motion to amend the complaint at the hearing on March 6, 2006. Defendants oppose Plaintiffs' request to amend the complaint based on arguments that include prejudice and futility.

Leave to file an amended pleading under Fed.R.Civ.P. 15(a) "shall be freely given when justice so requires" and this policy "'is to be applied with extreme liberality.'" Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)(quoting Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)). Generally, inferences should be drawn "in favor of granting the motion" to amend. Griggs v. Pace American Group, Inc., 170 F.3d 877, 880 (9th Cir. 1999). The Court has considered Plaintiffs' motion in the context of the relevant factors of bad faith, undue delay, prejudice to the opposing party, and/or futility. Owens, 244 F.3d at 712. This Court is afforded discretion in considering a motion to amend the complaint. See De Saracho v. Custom Food Mach. Inc., 206 F.3d 874, 878 (9th Cir. 2000).

In Arizona, the elements of a defamation claim involving a public figure are: (1) a false statement concerning the plaintiff; (2) the statement was defamatory; (3) the statement was published to a third party; (4) the defendant made the statement with actual malice; and

- 2 -

1  (5) the plaintiff was damaged as a result of the statement. Morris v. Warner, 770 P.2d 359,
2  366 (Ariz. App. 1988). Speech about a public figure, such as Plaintiff Canez, an elected
3  Constable, can be the proper subject of a defamation claim "when made with 'actual malice' -
4  that is, with knowledge that it was false or with reckless disregard of whether it was false or
5  not." Citizen Publishing Co. v. Miller, 115 P.3d 107, 111 n. 2 (Ariz. 2005). Plaintiff Canez
6  is required to prove all of the elements except actual malice by a preponderance of the
7  evidence. Morris, 770 P.2d at 366. "Actual malice must be established by clear and
8  convincing evidence." Id. See Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510
9  (1991)("where ... plaintiff is a public figure, he cannot recover unless he proves by clear and
10 convincing evidence that the defendant published the defamatory statement with actual
11 malice, i.e., with 'knowledge that it was false or with reckless disregard of whether it was
12 false or not'")(quoting New York Times Co. v. Sullivan, 376 U.S. 254, 297-80 (1964)).
13      In Burns v. Davis, 993 P.2d 1119 (Ariz. App. 1999), the Arizona Court of Appeals
14 discussed as follows the determination of whether a statement is "actionable" as defamation:

> Statements that can be interpreted as nothing more than rhetorical political invective, opinion, or hyperbole are protected speech, but false assertions that state or imply a factual accusation may be actionable. ... The trial court first decides whether, under all the circumstances, a statement is even capable of a defamatory meaning. ... If so found, the jury then determines whether the defamatory meaning was actually conveyed. ... In most instances, it is for the jury to determine whether an ordinary reader or listener would believe the statement to be a factual assertion, mere opinion or hyperbole.... The meaning of words and statements should not be construed in isolation; rather, consideration should be given to the context and all surrounding circumstances, including the impression created by the words used and the expression's general tenor.

Id., at 1129 (citing Yetman v. English, 811 P.2d 323 (Ariz. 1991)). The issue of actual malice is a question of fact for a jury. Miller v. Servicemaster By Rees, 851 P.2d 143, 146 Ariz. App. 1992). However, if there is no evidence of malice then the court can decide the issue. Id.

Plaintiffs cite the following passage from the March 31, 2001 news article as support for the proposed defamation claim:

- 3 -

> Hefner said he considers himself a victim. He said that he didn't get physical until Canez struck him a couple of times, an allegation that Canez strenuously denied.

(Doc. 142, March 31, 2001 news article). Plaintiffs state that Mr. Hefner's words that "he didn't get physical until Canez struck him a couple of times, ... " is alleged to be false. (Doc. 142, p. 3). Plaintiffs submit that the proof will show that at no time did Mr. Canez strike Defendant Hefner. (id.). Plaintiffs have explained that the "clear import of Hefner's statement to the reporter is that Canez was the aggressor and that Canez is lying in denying that he was the aggressor because the article states with regard to this allegation that it is one that 'Canez strenuously denied.'" (id., pp. 3-4).

The Court has examined the statement in the context of the entire circumstances. The news article which dealt with the alleged "courthouse scuffle" contains for the most part a description of the events as provided by Plaintiff Canez. More specifically, the article includes the following statement:

> On March 9, when Canez tried to enter the area to make photocopies, Hefner, the security guard, gave him a shove, wrestled him to the ground and slapped handcuffs on him, Canez said.

(Doc. 142, March 31, 2001 news article).

In support of their motion to amend the complaint, Plaintiffs contend that they have alleged in their first amended complaint that statements were made that were false, that Plaintiffs were injured as a result of such false statements, and that the statements were made with "knowledge of their falsity, or with reckless disregard for the truth of the statements." (Doc. 142, at p. 2-3). Plaintiffs cite the following allegations which are set forth in their first amended complaint in support of Count Four - conspiracy:

> Defendants Gastelum and Hefner planned and agreed to have Plaintiff Canez arrested on a pretextual charge with the intent that plaintiff should be arrested and publically humiliated. Gastelum was the author of the plan and Hefner was Gastelum's agent in implementing it. In furtherance of the plan, Hefner physically assumed control over the person of Frank Canez and assaulted and battered him and caused him to be falsely arrested and imprisoned.

- 4 -

(Doc. 1 - first amended complaint at ¶ 24). Plaintiffs also have cited to the allegations set forth in support of the false light invasion of privacy claim (Count Three):

> Defendant Gastelum, by publishing false information concerning plaintiffs, invaded their privacy and held them up to a false light in the eyes of the public. Defendant Gastelum made false accusations against the plaintiffs with the knowledge of their falsity, or with reckless disregard for the truth of the statements.

(Doc. 1 - first amended complaint at ¶ 22).

As indicated by these cited passages, Plaintiffs have not alleged in their first amended complaint that any false statements were made by Defendant Hefner. Rather, Plaintiffs have alleged that false statements were made by Defendant Gastelum. The news article, however, states that "Gastelum refused to comment because of the possibility of legal action, said a Justice Court worker this week." (Doc. 142, March 31, 2001 news article). The news article therefore contains no statements allegedly made by Defendant Gastelum on which a claim for defamation could be based.

It appears from Plaintiffs' argument that they are somehow attempting to proceed on their defamation claim based on an alleged agreement between Defendants Gastelum and Hefner. Plaintiffs' theory is too tenuous, however, given that the cited news article contains no statements allegedly made by Defendant Gastelum. Moreover, Plaintiffs have not alleged in their first amended complaint any agreement between Defendants Gastelum and Hefner to make defamatory statements concerning Plaintiff Canez.

In addition, in Godbehere, 783 P.2d at787-88, the Arizona Supreme Court discussed at length the distinctions between defamation and false light invasion of privacy claims. As noted in this discussion, the nature of the interests protected by each action differs substantially and the two causes of action serve very different objectives, deter different conduct and redress different wrongs. Id., at 787 ("[a] plaintiff may bring a false light invasion of privacy action even though the publication is not defamatory, and even though the actual facts stated are true.").

- 5 -

1     The Court further has concerns with Plaintiffs' request to amend their complaint to
2 assert a defamation claim at this late stage of the proceedings.  Plaintiffs cite no reason for
3 waiting to assert a defamation claim other than their acknowledgment in their supplemental
4 response to Defendant Hefner's motion in limine that the false light invasion of privacy claim
5 could not proceed because of Plaintiff Canez' status as a public figure. Even then, Plaintiffs
6 simply sought leave to amend the "caption" of Count Three to reference a claim for
7 defamation. The Court also notes that Godbehere v. Phoenix Newspapers, Inc., 783 P.2d 781
8 (Ariz. 1989), which Plaintiffs have cited as indicating that the false light invasion of privacy
9 claim could not proceed because Mr. Canez is considered a public figure, was cited in the
10 joint proposed pretrial order at page 6 submitted on February 2, 2006.

11     The discovery cutoff date in this case was reset to September 13, 2004.  The Court
12 issued its Order denying Defendants' motions for summary judgment on September 30, 2005.
13 On October 20, 2005, the Court set trial for  March 7, 2006.  Trial was continued to March
14 16, 2006 and then March 21, 2006 due to another trial in federal court which involved
15 counsel for Defendant Hefner.  The Court recently continued trial for three trial days to the
16 present date of March 23, 2006 for jury selection due to emergency circumstances
17 concerning counsel for Defendants Gastelum and Maricopa County. The parties, with some
18 delay, filed notice of joint proposed pretrial order on February 2, 2006 and then subsequently
19 tendered an amended joint proposed pretrial order on or about February 17, 2006.

20     The Court concludes that Plaintiffs' proposed defamation claim is based on allegations
21 which at best are tenuous where no alleged false statements have been attributed to
22 Defendant Gastelum in the news article. "Where the legal basis for a cause of action is
23 tenuous, futility supports the refusal to grant leave to amend."  Lockheed Martin Corp. v.
24 Network Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999)(citing Morongo Band, 893 F.2d
25 at 1079).  Moreover, it would be unfair at this late stage in the proceedings to require
26 Defendants to defend against a defamation claim which is "substantially" distinct from a false
27 light invasion of privacy claim. The Court further finds undue delay in Plaintiffs' request to
28 amend the complaint on the eve of trial and resulting prejudice to Defendants. Any effort to

1  minimize the prejudice by permitting further discovery on the defamation claim, such as
2  taking the deposition of proposed witness Mr. Whiting, would unduly distract from the
3  parties' trial preparation efforts.
4  **Accordingly**,
5  **IT IS ORDERED** that Plaintiffs' motion to amend the first amended complaint to
6  assert a claim for defamation is denied.
7  DATED this 27th day of March, 2006.

_____
Mary H. Murguia
United States District Judge